RANDY M. RODRIGUEZ, ESQ. (SBN310328)
LAW OFFICE OF RANDY M. RODRIGUEZ
1605 W. Olympic Blvd Suite 9014
Los Angeles, CA 90015
T (818) 568-7321 F(209) 203-1863

Attorney for Petitioner,
Bernarlinda Nazaret Centeno Rodriguez

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| BERNARLINDA NAZARET CENTENO RODRIGUEZ, A#246-600-691<br><br>Petitioner,<br><br>v.<br><br>JOSHUA JOHNSON, in his official capacity as Warden, Desert View Facility; JAIME RIOS, in his official capacity as Acting Field Office Director, U.S. Immigration and Customs Enforcement; David J. Venturella, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of United States Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Case No. 26-5891<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner Bernarlinda Nazaret Centeno Rodriguez, by and through undersigned counsel, respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and in support thereof states as follows:

## I. INTRODUCTION

1. Petitioner is a nineteen-year-old civil immigration detainee currently confined at the Adelanto ICE Processing Center in Adelanto, California, within this district. Petitioner is a native and citizen of Nicaragua who fled her country as a fifteen-year-old child alongside her mother, Eunice Jokebed Centeno Rodríguez, after her mother suffered political persecution. On January 1, 2023, Petitioner turned herself in to U.S. Customs and Border Protection ("CBP") after crossing the border near San Luis, Arizona. After processing her, the Department of Homeland Security ("DHS") released Petitioner into the United States on parole on January 2, 2023, pursuant to 8 U.S.C. § 1182(d)(5)(A). *See Exhibit 1.*

2. For more than three and a half years, Petitioner did everything the government asked of her. She reported to U.S. Immigration and Customs Enforcement ("ICE") as directed and attended every ICE check-in. She filed an affirmative asylum application with U.S. Citizenship and Immigration Services ("USCIS"), which was pending at the time of her detention. *See Exhibit 2*. Based on that application, USCIS granted her employment authorization. She built her life in Los Angeles,

where she is currently enrolled as a college student at Los Angeles Trade-Technical College ("LATTC"). She has no criminal record of any kind.

3. On September 24, 2026, Petitioner reported to her scheduled ICE check-in, exactly as required. ICE detained her. She received no prior notice, no written notice terminating her parole, no explanation, and no hearing of any kind. Nothing about Petitioner's circumstances had changed. The Notice to Appear that DHS issued the same day—which lists Petitioner's residence as the Adelanto detention facility itself—does not even acknowledge her parole; it alleges that she was "not then admitted or paroled," an assertion contradicted by DHS's own records.

4. This case is materially indistinguishable from *Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 (C.D. Cal. Sept. 21, 2026), in which this Court granted habeas relief and ordered the immediate release of a noncitizen who, like Petitioner, had been released by immigration authorities following his entry, was never placed in removal proceedings because DHS never filed his Notice to Appear with the immigration court, and was later re-detained without notice or a pre-deprivation hearing. The Court held that the petitioner's release created a protected liberty interest in remaining out of custody, that his re-detention without notice or a pre-deprivation hearing violated procedural due process, and that only a return to the status quo could remedy that violation. *Id.* at 6–9. Petitioner's case is,

if anything, stronger: her release was a formal grant of parole under 8 U.S.C. § 1182(d)(5)(A), extended to her when she was a fifteen-year-old child; she has an affirmative asylum application and employment authorization; she has spent the years since pursuing her education; and she was taken into custody while complying with ICE's own reporting requirements.

5. Petitioner seeks her immediate release and an order prohibiting her re-detention absent notice and a pre-deprivation hearing before a neutral decision maker. In the alternative, Petitioner seeks an order compelling Respondents to provide a prompt bond hearing before an immigration judge at which the government bears the burden of proof by clear and convincing evidence, with release to follow automatically if that deadline is not met.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241(c)(3), which authorizes federal courts to grant habeas relief to persons held "in custody in violation of the Constitution or laws or treaties of the United States," and under 28 U.S.C. § 1331 (federal question jurisdiction). The Court may also grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and the All Writs Act, 28 U.S.C. § 1651.

7. No provision of 8 U.S.C. § 1252 bars review. Petitioner challenges the lawfulness of her detention, not any decision to commence proceedings, adjudicate a case, or execute a removal order. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion). Moreover, no removal proceedings were pending against Petitioner when she was detained, and no order of removal exists. Although DHS has since issued a Notice to Appear and removal proceedings are now pending before the Adelanto Immigration Court, this Petition does not challenge those proceedings or any decision in them; it challenges only the lawfulness of Petitioner's present custody.

8. Venue is proper in this district under 28 U.S.C. § 1391(e) and the immediate-custodian rule, *see Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), because Petitioner is confined at the Adelanto ICE Processing Center, located in San Bernardino County within the Eastern Division of the Central District of California.

## III. PARTIES

9. Petitioner Bernarlinda Nazaret Centeno Rodriguez (A# 246-600-691) is a native and citizen of Nicaragua. She is nineteen years old. She is currently detained at the Adelanto ICE Processing Center, located at 10400 Rancho Road, Adelanto, CA 92301.

10. Respondent Joshua Johnson is the Warden of the Desert View Facility at the Adelanto ICE Processing Center and is Petitioner's immediate custodian. He is sued in his official capacity.

11. Respondent Jaime Rios is the Acting Field Office Director for the Los Angeles Area of Responsibility, U.S. Immigration and Customs Enforcement ("ICE"), and is responsible for Petitioner's continued detention. He is sued in his official capacity.

12. Respondent David J. Venturella is the Acting Director of ICE and is sued in his official capacity. ICE is responsible for the detention of Petitioner.

13. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity.

14. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity.

## IV. STATEMENT OF FACTS

15. Petitioner is a native and citizen of Nicaragua. When Petitioner was fifteen years old, she fled Nicaragua together with her mother, Eunice Jokebed Centeno Rodríguez, after her mother suffered political persecution there.

16. On January 1, 2023, Petitioner, then fifteen years old, crossed the border near San Luis, Arizona and turned herself in to CBP. Petitioner did not attempt to evade inspection.

17. On January 2, 2023, DHS paroled Petitioner into the United States pursuant to Section 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5)(A). *See Exhibit 1* (CBP parole stamp and Form I-94; Form I-385, noting "THE SUBJECT WAS PAROLED"; ICE Form G-56). DHS's regulations authorize parole only for noncitizens who "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

18. Upon her release, DHS did not serve Petitioner with a Notice to Appear. Instead, DHS issued her ICE Form G-56, directing her to report to her local ICE office within 60 days of release to continue her processing and to be considered for enrollment in an Alternatives to Detention program, and her Form I-385 likewise directed her, as a condition of parole, to report to an ICE office near her final destination within 60 days. *See Exhibit 1*. On information and belief, no Notice to Appear was served on Petitioner or filed with the immigration court during the more than three and a half years that followed. Before her detention, Petitioner had never been placed in removal proceedings under 8 U.S.C. § 1229a, had never appeared before an immigration judge, and has never been ordered removed.

19. Petitioner complied. She reported to ICE as directed and thereafter attended every ICE check-in. She never missed a check-in.

20. Petitioner has built her life in Los Angeles, California. She is currently enrolled as a college student at Los Angeles Trade-Technical College. *See Exhibit 4*.

21. On January 26, 2024, Petitioner filed an affirmative application for asylum with USCIS. That application was pending at the time of her detention. *See Exhibit 2*. Based on that pending application, USCIS granted Petitioner employment authorization. *See Exhibit 2 and 4*.

22. Petitioner has no criminal record. She has never been arrested, charged with, or convicted of any offense in the United States or in any other country.

23. On September 24, 2026, Petitioner appeared at her scheduled ICE check-in at the ICE Los Angeles Field Office, 300 N. Los Angeles Street, Los Angeles, California 90012. ICE detained Petitioner, along with her mother, Eunice Jokebed Centeno Rodríguez. On information and belief, Petitioner received no advance notice that ICE intended to detain her, no written notice terminating her parole, no statement of reasons for her detention, and no opportunity to be heard before she was taken into custody. Nothing had changed in Petitioner’s circumstances: she

had not been arrested, had not violated any condition of her release, and had not failed to appear for anything.

24. Only after detaining Petitioner did DHS serve her with a Notice to Appear, dated September 24, 2026—more than three and a half years after her parole. *See Exhibit 3*. The Notice to Appear lists Petitioner's address as the Adelanto detention facility, 10400 Rancho Road, Adelanto, California. *Id.* It designates Petitioner as "an alien present in the United States who has not been admitted or paroled," alleges that she "w[as] not then admitted or paroled after inspection by an Immigration Officer," and charges her as removable under 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). *Id.* Those allegations are contradicted by DHS's own records, which show that DHS paroled Petitioner on January 2, 2023. *See Exhibit 1*.

25. Petitioner was transported to and is currently confined at the Adelanto ICE Processing Center. The Notice to Appear set an initial hearing before the Adelanto Immigration Court on October 5, 2026, at 1:00 p.m. *See Exhibit 3*. Petitioner is currently set for a master hearing on November 6, 2026, at 08:00 a.m. with IJ Jonathan Brent at the Adelanto Immigration Court. Each day of detention separates Petitioner from her family and her community in Los Angeles and interrupts her college education.

# V. ARGUMENT

***A. Petitioner's Re-Detention Without Notice or a Pre-Deprivation Hearing Violates the Due Process Clause***

26. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "[T]he government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Courts evaluate procedural due process challenges to immigration detention under the three-factor test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

27. Once Petitioner was released from custody, she acquired "a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The government's decision to release an individual "creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 792 F. Supp. 3d at 1032 (internal quotation marks omitted). In *Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12, this Court applied these principles to a petitioner who was merely released on his own recognizance after entry. *Id.* at 6. Petitioner's liberty interest here rests

on an affirmative grant of parole under 8 U.S.C. § 1182(d)(5)(A), reinforced by more than three and a half years of compliance, a pending asylum application, employment authorization, her ongoing college enrollment, and continuous ICE supervision under which she reported as directed.

28. Petitioner's release on parole also necessarily reflects DHS's own determination that she posed neither a danger nor a risk of flight. *See* 8 C.F.R. § 212.5(b); *Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 6 n.1 (citing *Fernandez Lopez v. Wofford*, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025)). DHS made that determination about Petitioner when she was a fifteen-year-old child, and nothing in the more than three and a half years since has given it reason to revisit it.

29. Under the first *Mathews* factor, Petitioner's private interest is the most fundamental one: "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner's detention separates her from her community and halts the college education she is pursuing at LATTC.

30. Under the second *Mathews* factor, the risk of erroneous deprivation is high because Petitioner received no process at all. Every relevant fact weighs against

detention: Petitioner has no criminal record, attended every ICE check-in, voluntarily appeared at the very check-in at which she was detained, has a pending asylum application, and is enrolled in college. Indeed, the Notice to Appear that DHS issued on the day of her arrest misstates her most basic immigration history, alleging that she was never paroled when DHS's own records show that she was—underscoring the absence of any individualized determination. A pre-deprivation hearing before a neutral decisionmaker would have substantial value in preventing exactly this kind of arbitrary deprivation. *See Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 9 n.2.

31. Under the third *Mathews* factor, the government's interest in detaining Petitioner without a pre-deprivation hearing is minimal, because a bond hearing "is routine and can be easily provided." *See Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025). The government cannot credibly claim an urgent need to detain, without a hearing, a nineteen-year-old college student who walked into an ICE office voluntarily to comply with her reporting obligations.

32. On balance, the *Mathews* factors establish that Petitioner's re-detention without notice or a pre-deprivation hearing violated her procedural due process rights. *See Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 7; *Mourey v. Bowen*, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding

in *Mathews*, Petitioner should have been afforded a pre-detention hearing."), *report and recommendation adopted*, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); *Fernandez Lopez*, 2025 WL 2959319, at *6 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

33. Petitioner's detention also violates substantive due process. Civil immigration detention is permissible only where it bears a reasonable relation to its purposes of ensuring appearance and protecting the community. *See Zadvydas*, 533 U.S. at 690. Neither purpose is served by detaining a parolee with no criminal history who has complied with every reporting requirement for more than three years and who was paroled as a child accompanying her mother.

***B. Respondents Did Not Lawfully Terminate Petitioner's Parole***

34. The parole statute provides that a parolee is returned to custody only when the purposes of parole "have been served" in the opinion of the Secretary. 8 U.S.C. § 1182(d)(5)(A). DHS's implementing regulation requires that, when parole is terminated on that basis, termination be effected "upon written notice to the alien."

8 C.F.R. § 212.5(e)(2)(i). Agencies are bound to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954).

35. On information and belief, Respondents made no determination that the purposes of Petitioner's parole had been served and provided Petitioner no written notice terminating her parole before detaining her. Respondents' failure to comply with the statute and their own regulation independently renders Petitioner's detention unlawful.

36. Respondents' own charging document confirms that no such determination was made. Rather than terminating Petitioner's parole, the Notice to Appear disregards it altogether, alleging that Petitioner was never paroled at all. *See Exhibit 3*. Respondents cannot have determined that the purposes of Petitioner's parole had been served while simultaneously asserting that her parole never existed.

37. To the extent Respondents contend that Petitioner's parole lapsed by its own terms shortly after her release, that contention does not cure the violation. DHS's own release paperwork directed Petitioner to report to ICE to continue her processing and to be considered for an Alternatives to Detention program, *see Exhibit 1*, and for more than three and a half years thereafter ICE permitted Petitioner to remain at liberty under its supervision. Whatever label Respondents now attach to that release, it is the government's sustained, affirmative decision to

allow Petitioner to live at liberty that gives rise to her protected liberty interest. *See Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 6 (recognizing liberty interest of petitioner released on his own recognizance).

***C. Respondents Lack a Valid Statutory Basis for Petitioner's Detention, and No Asserted Statutory Authority Can Cure the Due Process Violation***

38. When ICE detained Petitioner, no removal proceedings were pending against her. Section 1225(b)(2)(A) provides for detention "for a proceeding under section 1229a," and Section 1226(a) authorizes arrest and detention "pending a decision on whether the alien is to be removed." Respondents served Petitioner with a Notice to Appear only after taking her into custody. A charging document served after the arrest cannot supply the statutory basis for the arrest itself, and Respondents may not detain first and initiate proceedings afterward to justify that detention.

39. To the extent Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), Petitioner was apprehended in the interior of the United States, at an ICE office, after residing here for more than three and a half years—not while seeking entry at the border. *See Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026). To the extent Respondents rely on Board of Immigration Appeals decisions such as *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), or *Matter of Q. Li*, 29 I. & N.

Dec. 66 (BIA 2025), those decisions do not bind this Court's interpretation of the statute. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

40. In any event, this Court need not resolve the statutory question to grant relief. As in *Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12, the constitutional violation lies in Respondents' revocation of Petitioner's liberty without notice or a pre-deprivation hearing. No statutory classification asserted after the fact can retroactively supply the process that the Due Process Clause required before Petitioner was taken into custody.

### *D. Exhaustion of Administrative Remedies Is Not Required and Should Be Excused*

41. There is no statutory exhaustion requirement for habeas petitions under 28 U.S.C. § 2241. Any exhaustion requirement is prudential and may be waived where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be futile, or irreparable injury would result. *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004).

42. Each of those circumstances is present. First, under current Board precedent, immigration judges treat applicants for admission—including parolees whose parole DHS deems terminated—as ineligible for bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216; *Matter of Q. Li*, 29 I. & N. Dec. 66. Requiring

Petitioner to seek a bond hearing would therefore be futile. Second, the administrative process cannot remedy the violation. A post-deprivation bond hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025). Third, each day of unconstitutional detention inflicts irreparable injury that cannot be undone.

43. This Court granted relief in *Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12, even though the petitioner there had the ability to request a custody redetermination hearing. *Id.* at 3, 8. The same result is warranted here.

***E. Immediate Release, With Protection Against Re-Detention Absent Due Process, Is the Appropriate Remedy***

44. Because Petitioner's re-detention violated due process, "Petitioner's release is necessary to return [her] to the status quo." *Nazarian v. Noem*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). Here, that is Petitioner's release on parole, subject to ICE reporting, before September 24, 2026. *See Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 7; *Esmail v. Noem*, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025).

45. A growing number of courts in this district have concluded that a post-hoc bond hearing cannot support continued detention where the underlying re-detention violated due process. *See Orellana Rivera v. J. Johnson*, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (collecting cases). Only release can restore the status quo.

46. Petitioner further requests a limited permanent injunction barring Respondents from re-detaining her without at least seven days' notice and a pre-deprivation hearing before an immigration judge at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure her appearance and the safety of the community. Each *eBay* factor is satisfied: Petitioner has suffered irreparable injury through unconstitutional detention; damages cannot remedy that injury; and the balance of hardships and the public interest favor requiring basic due process before any future re-detention. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 9–11; *Mourey*, 2026 WL 467567, at *6; *Huy Cu v. Marin*, 2026 WL 1427009, at *1–3 (C.D. Cal. May 21, 2026); *Araujo-Contreras v. Janecka*, 2026 WL 1625368, at *1–4 (C.D. Cal. June 3, 2026).

47. In the alternative only, should the Court decline to order immediate release, Petitioner requests a conditional writ ordering her release unless Respondents provide her an individualized bond hearing before an immigration judge within seven (7) days of this Court's order, at which Respondents bear the burden of justifying continued detention by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).

48. Petitioner is neither a flight risk nor a danger to the community. She has no criminal record. She presented herself to CBP upon arrival as a fifteen-year-old child, was paroled by DHS, filed for asylum, obtained employment authorization, reported to ICE as directed, and attended every ICE check-in—including the one at which she was detained. She is enrolled as a student at LATTC, lives in Los Angeles, California, and will return to her family and her studies upon release.

***F. Attorneys' Fees and Costs***

49. Petitioner requests an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and will submit an application within thirty days of final judgment. *See Lopez Martinez v. Johnson*, No. 5:26-cv-04951-AJR, Dkt. 12 at 11.

## **VI. PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Order Respondents to show cause why the writ should not be granted, within three days pursuant to 28 U.S.C. § 2243;

C. Declare that Respondents' re-detention of Petitioner without notice or a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment;

D. Order Respondents to immediately release Petitioner from custody, subject only to the conditions of her parole or release in effect prior to September 24, 2026, and to return any confiscated property and documents upon release;

E. Enjoin Respondents from re-detaining Petitioner without providing at least seven (7) days' notice and a pre-deprivation hearing before an immigration judge at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure her appearance and the safety of the community;

F. In the alternative only, order Respondents to provide Petitioner an individualized bond hearing before an immigration judge within seven (7) days, at which Respondents bear the burden of proof by clear and convincing evidence, with release to follow automatically if that deadline is not met;

G. Order that Respondents not transfer Petitioner outside the Central District of California while this Petition is pending;

H. Order Respondents to file a notice of compliance within three (3) days of the Court's order;

I. Award Petitioner her costs and reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and as otherwise permitted by law; and

J. Grant such other and further relief as this Court deems just and proper.

Dated: October 6, 2026

Randy M. Rodriguez, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Bernarlinda Nazaret Centeno Rodriguez, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

//
//
//

Dated this 6th day of October, 2026.

Randy M. Rodriguez, Esq.
Attorney for Petitioner